CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 07 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

|  |  |
|---|---|
| PROTHERAPY ASSOCIATES, LLC, | CIVIL NO. 6:10cv0017 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| AFS OF BASTIAN, INC. ET AL, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiff Protherapy Associates ("Plaintiff") is a Florida corporation that provides therapy services to residents of skilled nursing facilities. Plaintiff contracted with each of the eight Defendants[1] to provide therapy services, and Defendants allegedly defaulted on several terms of the contracts. The parties subsequently engaged in negotiation to resolve the alleged breach, which occurred primarily over email. Although the original contracts contained an arbitration clause requiring the parties to arbitrate all claims, Plaintiff asserts that the parties reached an enforceable settlement over email that eviscerated the arbitration clause, and brought this action to enforce the terms of the purported settlement agreement. The matter is now before the Court on Defendants' motion to compel arbitration [docket no. 31], and Plaintiff's response thereto. For the reasons stated herein, I will grant in part and deny in part Defendants' motion.

## I. BACKGROUND

In August 2009, Plaintiff and Defendants entered into therapy services agreements,

---

[1] The Defendants are health care facilities that provide physical therapy, occupational therapy, and speech/language pathology.

whereby Plaintiff would provide services to each of the Defendant facilities. Although the terms of each agreement between Plaintiff and each Defendant vary slightly, each agreement contains an arbitration provision, which states in relevant part that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof . . . shall be settled by binding arbitration." Additionally, each of the Agreements stated that any modifications must be made in writing.

By November 2009, Defendants had allegedly defaulted on their payment obligations to Plaintiff. Additionally, Defendants allegedly hired more than fifty of Plaintiff's employees, in violation of the Agreements' non-solicitation clause. The parties engaged in email negotiation to resolve the outstanding payments and non-solicitation disputes. According to Plaintiff, the parties reached a settlement agreement over email, and in that settlement agreement, the parties agreed that if they do not adhere to the agreed upon terms of settlement in the email, each party consents to jurisdiction in this Court to resolve the dispute. Defendants argue that the email has no effect on the original contract; it does not modify, alter, or amend the underlying agreement. Accordingly, Defendants argue that the arbitration clause of the original contract requires the disputes between the parties to be resolved in arbitration.

## II. STANDARD OF REVIEW

"In ruling on a motion to compel arbitration, a trial court must consider three elements: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Blue Cross and Blue Shield of Florida, Inc. v. University of Florida Bd. Of Trustees*, 14 So. 3d 1261, 1263 (Fla. Dist. Ct. App. 1st Dist. 2009) (citing *Seifert v. United States Home Corp.*, 750 So.2d 633, 636 (Fla. 1999)).[2] "A party's

---

[2] The original contracts state that the agreements "will be deemed to have been made in and [their] validity and interpretation shall be governed by and construed under the laws of the State of Florida." Nothing in the (cont . . .)

contract rights [to arbitration] may be waived by . . . taking action inconsistent with that right." *Raymond James Financial Services, Inc. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005) (citation omitted). Any doubts about the scope of an arbitration agreement, or waiver thereof, should be resolved in favor of arbitration. *Ronbeck Const. Co., Inc. v. Savanna Club Corp.*, 592 So.2d 344 (Fla. 4th DCA 1992).

### III. DISCUSSION

As an initial matter, I must determine if the email at issue constitutes a valid contract. If the email is not a valid contract, the parties would necessarily be bound to arbitrate their disputes pursuant to the terms of their original contracts.

Where the parties "agree on the essential terms and seriously understand and intend the agreement to be binding on them," an enforceable contract exists. *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So.2d 404, 408 (Fla. 1974); *Eastern Air Lines, Inc. v. Mobil Oil Corp.*, 564 F.Supp. 1131, 1145 (S.D. Fla. 1983) ("If parties so intend, a contract is binding from the time it is made even though the parties also agree that a formal writing embodying its provisions will subsequently be prepared."). Additionally, the subsequent acts of the parties can be instructive as to whether the parties intended to be bound to their agreement. Indeed, "'[t]he subsequent conduct and interpretation of the parties themselves may be decisive of the question as to whether a contract has been made . . . .'" *Seal Prods. v. Mansfeld*, 705 So.2d 973, 976 (Fla. 3d DCA 1998) (quoting 1 Arthur L. Corbin & Joseph Perillo, *Corbin on Contracts* § 2.9, at 154-55 (rev. ed. 1993)).

Here, the email at issue addresses the essential terms of the payment dispute. The parties

---

email speaks to any change of the original choice-of-law term in the original contract. Rather, the email states that "[a]ll other terms of the underlying contracts (not inconsistent herewith) . . . shall remain in full force." Accordingly, I will apply Florida law to the present dispute.

set forth in paragraph one of the email the amounts to be paid by Defendants and the dates by which those balances were to be paid. Additionally, the parties agreed in paragraph two that they would "release each other [from future claims] as [the agreement] relates to services provided and payments owed." Moreover, subsequent to the parties settling the outstanding balances, Defendants began making payments to Plaintiff pursuant to the email agreement. Although the email agreement does state that Plaintiff will "draft an agreement memorializing" the terms of the email, that the parties contemplated committing their agreement to a more formal writing does not suggest that no contract existed at the time the parties agreed to the terms of the email. *See Blackhawk Heating & Plumbing Co.*, 302 So.2d at 408. Whatever uncertainty may exist as to whether the language of the email itself establishes a valid settlement agreement as to the outstanding payments dispute, I conclude that the subsequent acts of the parties confirm that the parties intended to be bound by the terms of the email agreement.[3] Accordingly, I must next determine whether the agreement alters the original contract term requiring the arbitration of claims.

"[P]arties to any contract may, by a new and later agreement, rescind in whole or in part, alter or modify it in any respect, add to or supplement it, or replace it by a substitute." ¶4; 17A Am. Jur. 2d Contracts § 500 (2010). In the email settlement agreement, the parties state that they will mediate the non-soliciation claim, and if mediation proves unsuccessful, "the parties consent to the jurisdiction of the US District Court for the Western District of Virginia (Lynchburg Division)." By contrast, there is nothing in the email that explicitly states that this Court (or any court) shall have jurisdiction over the outstanding payments dispute. Indeed, the explicit consent

---

[3] To the extent Defendants argue that the email does not conform to the writing requirement of the terms of the original contract governing modifications, and therefore cannot serve to alter or amend the terms of the original contract at all, I find such argument to be without merit. *See, e.g., Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289 295-96 (7th Cir. 2002) (concluding that email between parties satisfies the statute of frauds); *see also Lamle v. Mattel, Inc.*, 394 F.3d 1355, 136 (Fed. Cir. 2005) (same).

to this Court's jurisdiction regarding the non-solicitation claim stands in stark contrast to the final provision of the email, which states that "[a]ll other terms of the contracts . . . shall remain in full force." Because the parties explicitly agree to consent to this Court's jurisdiction regarding the non-solicitation claim, I conclude that they have sufficiently altered the original arbitration term with regard to that claim. However, because the parties only explicitly render the non-solicitation claim nonarbitrable, but otherwise incorporate the terms of the original agreements into the email, I conclude that the parties remain bound to arbitrate the payments dispute. Accordingly, I will grant in part and deny in part Defendants' motion to compel arbitration.

## IV. CONCLUSION

For the reasons stated herein, I will grant in part and deny in part Defendants' motion to compel arbitration, in a separate order to follow.

ENTERED: This ___ Day of July, 2010

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE